ORIGINAL

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2004 JAN 30 PM 4: 22

CLERK
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

NIKE, INC., )
)
      Plaintiff, )
)
v. ) CV 402-182
)
VARIETY WHOLESALERS, INC. )
d/b/a ROSE'S STORES, INC., )
)
      Defendant. )

## ORDER

Plaintiff Nike Inc. ("Nike") has been found to be entitled to reasonable attorney fees and costs incurred in the above styled action pursuant to the Court's Order of July 22, 2003 ("Trial Order"). Now before the Court is Nike's motion for attorneys' fees and costs (Doc. 152). Defendant Variety Wholesalers, Inc. ("Variety") requests the Court to deny Nike's attorneys' fee petition in its entirety or to reduce the amount sought.

### I.

The following undisputed facts are revealed by the parties' jointly submitted stipulations (Doc. 154), the Trial Order, statements made on the record at a conference held January 5, 2004, and other facts manifest in the record.

On November 29, 2000, Nike sued Variety in this Court for willful trademark counterfeiting, trademark infringement, unfair competition, trademark dilution, and unfair trade practices. See CV 400-307 ("Prior Action"). The complaint in the Prior Action

concerned apparel which allegedly bore unauthorized reproductions, copies, counterfeits and/or colorable imitations of certain Nike trademarks.

On February 19, 2001, Nike and Variety entered into a written agreement settling the Prior Action ("Settlement Agreement"). The Settlement Agreement provided that the prevailing party in any suit for its breach "shall recover its costs and reasonable attorneys' fees from the other party" (Doc. 154 ¶ 3). Pursuant to the terms of the Settlement Agreement, Variety paid Nike $80,000.00, and Nike dismissed the Prior Action with prejudice.

On August 9, 2002, Nike filed the present action alleging, among other things, that Variety breached the Settlement Agreement by selling socks, tee-shirts, and fleece items bearing counterfeits of Nike's trademarks. Nike sought, among other relief, an award of treble damages based on its allegation that Variety was willfully blind to trafficking in counterfeit goods.

Nike chose Gursky & Ederer LLP, now known as "Gursky & Partners LLP" ("Gursky"), to represent Nike in the Prior Action and in the present action. Gursky, which has particular expertise in trademark counterfeiting matters and is recognized nationally as specializing in litigating trademark infringement and counterfeiting actions, has handled Nike's anti-counterfeiting matters in the United States since 1996 and has developed a detailed familiarity with Nike and its trademark enforcement policies. The firm's attorneys, including those who worked on the present action, are experienced in litigating matters of

trademark infringement and counterfeiting. Savannah attorney Patrick T. O'Connor of Oliver, Maner & Gray, LLP, assisted by junior associate Paul Threlkeld and a senior paralegal, furnished local counsel services and assisted during the trial.

After the present action was tried in a three-day bench trial held June 30 through July 2, 2003, the Court (1) found for Nike on its trademark counterfeiting claim, federal and common law trademark infringement claims, false designation of origin claim, unfair competition claim, trademark dilution claim, and breach of contract claim, (2) awarded Nike $1,350,392 (representing Variety's profits) or, in the alternative, statutory damages in the amount of $900,000, and (3) permanently enjoined Variety from using counterfeits of Nike's trademarks. The Court also found that Nike failed to prove that Variety was willfully blind to trafficking in counterfeit goods and that treble damages were therefore not available to Nike.

Because Variety was found liable to Nike for breach of contract in violating the Settlement Agreement, the Court stated that Nike is entitled to reasonable attorney fees and costs pursuant to the Settlement Agreement. The Court directed Nike to submit a detailed summary of its reasonable attorneys' fees, directed Variety to file a response, and announced that after considering the parties' submissions, the Court would award reasonable attorneys' fees to Nike. Nike submitted a detailed summary of its fees (Doc. 132) unaccompanied by a motion or memorandum of law. After Variety filed a response memorandum, Nike filed a reply memorandum citing authorities (Doc. 140). By Order

issued September 26, 2003, the Court directed Nike to file a formal motion. On October 1, 2003, Nike filed a motion accompanied by a copy of its earlier filed reply memorandum (Doc. 152).

The detailed summary of Nike's fees and expenses was provided by Gursky partner Martin J. Feinberg. Annexed to the Feinberg declaration were exhibits including, among other things, copies of Gursky's monthly bills submitted to Nike. Those bills show the work done and fees charged in connection with the present action. Of the $718,770.98 sought by Nike, $622,274.75 represents attorneys' fees billed by Gursky, and $96,496.23 represents expenses incurred by Gursky. Gursky reviewed the bills on a monthly basis and eliminated or reduced fees and expenses that could not be fairly be billed to Nike.

The hours billed to Nike for work performed by Gursky partners and Of Counsel in the present action follow. Louis S. Ederer, Nike's lead counsel in this action and at trial and head of Gursky's litigation department, who assumed overall responsibility for the case and supervised and reviewed the work of all other attorneys who worked on the case, billed a total of 214.25 hours. Martin J. Feinberg, head of Gursky's anti-counterfeiting department, who conducted the initial investigation of Variety, assisted in discovery, trial preparation and at trial, billed a total of 178.23 hours. Joseph H. Lessem, Of Counsel to Gursky during the course of the litigation, who assisted in preparing the Joint Statement of Undisputed Facts, motion papers and pre-trial papers, billed 198.50 hours. Steven R. Gursky, founding partner of Gursky, who was involved in planning and strategy for the case, billed 22.30 hours.

The hours billed to Nike for work performed by Gursky associates in the present action follow. Michael Pantalony, a senior Gursky associate who was responsible for day-to-day supervision of discovery and preparation of the entire case for trial and assisted in taking depositions and in the pre-trial preparation of motions and papers, billed 500.25 hours. Neil S. Goldstein, mid-level Gursky associate in the litigation department who assisted in discovery and in preparing all motions and pre-trial papers, billed 545.25 hours. Jacqueline J. Morales, a junior associate in the litigation department who was responsible for documentary discovery, compiling and organizing trial exhibits and performing legal research, billed 231.75 hours. Neil B. Friedman, a junior associate in the anti-counterfeiting department who was involved in reviewing and analyzing documents produced by Variety concerning their sale of counterfeit Nike merchandise and assisting in discovery, billed 45.35 hours. Kevin J. Heller, a junior associate in the litigation department who contributed to legal research and document review, billed 40.25 hours.

The hours billed to Nike for work performed by Gursky paralegals in the present action follow. Alan Veronick, a senior paralegal who was responsible for sales and profit calculations, digesting transcripts of depositions, and preparing deposition designations and the present fee application, billed 124.25 hours. Three paralegals, two in the anti-counterfeiting department and one in the litigation department, who assisted by conducting background investigations and reviewing and cataloging documents and physical exhibits for use at trial and preparing motions and court papers for filing, billed a collective total of

142.55 hours. Three additional paralegals/legal assistants billed a collective total of 43.50 hours in assisting attorneys and other paralegals in performing tasks related to the case.

The hourly billing rates charged to Nike for attorneys' services ranged from $325 to $425 for partners and Of Counsel, and from $175 to $295 for associates. The hourly billing rates charged Nike for services of paralegals ranged from $75 to $195 (senior paralegal).

Gursky's fee petition provided a breakdown of "expenses" which included Westlaw, Lexis, and Pacer charges, mailing and courier expenses, copying costs, telephone and fax charges, service of subpoena/investigators' fees, deposition transcripts, travel costs, and payments made to local counsel in Savannah, Georgia and in El Paso, Texas.

## II.

Urging the Court to deny Nike's fee petition entirely or to reduce the amount of the award Nike seeks, Variety asserts that (1) Nike failed to comply with Local Rule 7.1 in submitting its fee petition, (2) Nike's fee petition includes hours expended on matters not related to this action and on matters in this action in which Nike was unsuccessful, and the hourly rates underlying the fees are excessive, (3) Nike is not entitled to any claimed "expenses" that are not enumerated as "costs" in 28 U.S.C. § 1920, and (4) an offset should be made against any attorney fee award to compensate Variety for having to re-litigate matters that Variety had paid to settle in the Prior Action.

For the reasons that follow, the Court concludes that (1) Nike's fee petition is properly before the Court, (2) certain fees billed to Nike are not taxable to Variety and an

adjustment of the otherwise taxable fees is called for, (3) only "costs" enumerated in 28 U.S.C. § 1920 are taxable to Variety, and (4) Variety may not receive an offset.

1.  Nike's Compliance with Local Rule

Local Rule 7.1 (b) provides: "Unless the assigned Judge prescribes otherwise, every motion filed in civil proceedings shall be accompanied by a memorandum of law citing supporting authorities." Variety asserts that Nike did not file a memorandum of law accompanying its fee petition, thereby failing to comply with Local Rule 7.1(b). Nike, however, having construed the Court's direction in the Trial Order as "prescribing otherwise," argues that Nike complied with Local Rule 7.1(b) by timely filing a detailed summary of its fees (Doc. 132).

In light of Nike's technical compliance with the Court's direction in the Trial Order, Nike's subsequent filing of a reply memorandum, and Nike's immediate filing of a formal motion in compliance with the Court's Order of September 26, 2003, the Court determines that Nike's fee petition is properly before the Court.

2.  Determination of Lodestar and Adjustment Thereof

    a.  Threshold Determination: Objective Reasonableness Standard Applies

Nike is entitled to recover its reasonable attorneys' fees incurred in conjunction with the instant action pursuant to the terms of the Settlement Agreement. The parties differ as to how a "reasonable" fee award is to be determined. The essence of Variety's position is that Nike is entitled only to fees that are <u>objectively</u> reasonable as determined by

application of binding case law. See, e.g., Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299-1301 (11th Cir. 1988) (addressing standards for determining "objective estimate" of value of lawyer's services). The essence of Nike's position is that case law addressing objective reasonableness is not implicated here, but rather, that all fees billed by Gursky to Nike are reasonable by virtue of Gursky having exercised billing judgment in billing Nike and Nike having exercised business judgment in agreeing to pay the fees as billed.

Because the Settlement Agreement determines Nike's entitlement to reasonable fees, and because the sparsely worded attorney-fee clause in the Settlement Agreement in no way indicates how expansive (or how limited) the parties prospectively intended the attorney-fee provision to be, the Court finds it prudent to rely entirely on the well-settled objective reasonableness standards set forth in binding case law.

"[T]he starting point in any determination [of] an objective estimate of the value of a lawyer's services" is to determine the "lodestar" amount by multiplying "hours reasonably expended" by the "reasonable hourly rate." Norman, 836 F.2d at 1299 (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983)). The lodestar amount is then subject to adjustment for results obtained. Norman, 836 F.2d at 1302.

b. **Determination of Hours Reasonably Expended**

In determining the number of hours reasonably expended on behalf of Nike to enforce the Settlement Agreement or rectify any breach thereof, attorney hours billed for

matters shown to be unrelated to the lawsuit between the parties and attorney hours billed in unsuccessful pursuit or unsuccessful defense of discrete claims must be deducted from the hours expended. See id. at 1301-02.

### (I) Discrete and Unsuccessful Matters

Variety argues that any expenditure of hours by Nike's attorneys that resulted in an adverse ruling or was otherwise unsuccessful in the instant action – including pursuit of an unsuccessful claim, focus on an unsuccessful defense, and litigation of unsuccessful issues or motions – should be excluded from the total hours to be taxed to Variety. Variety's evidence consists of the affidavit of the senior vice president of Variety's general counsel and his "redlining" of unsuccessful matters included in Nike's fee petition. Nike, conceding that it did not succeed with respect to certain issues or motions, contends nevertheless that its success in the lawsuit as a whole merits an award of fees for its total hours expended.

The attorney hours which Variety seeks to deduct based on Nike's lack of success are: hours expended pursuing Nike's summary judgment motion (which was denied); hours devoted to drafting Nike's motion in limine (which was denied); hours devoted to Nike's motion for sanctions (which was denied); hours devoted to Nike's revival of claims from the Prior Action and calculation of profits from merchandise in the Prior Action (which prompted Variety's assertion of a res judicata defense upon which Variety prevailed); and hours devoted to Nike's attempt to obtain treble statutory damages by proving its "willful blindness" claim.

Because litigation involves filing motions and pressing issues, not all of which will be successful even when the claims to which they relate eventually yield successful results, carving litigation into "winning" and "losing" motions and issues is generally inappropriate. See Dowdell v. City of Apopka, 698 F.2d 1181, 1187 (11th Cir. 1983) ("The theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit."). Hours expended pressing unsuccessful discrete claims are, however, to be deducted. Norman, 836 F.2d at 1302.

In this case, fees incurred for hours expended in unsuccessfully pressing motions and issues that do not rise to the level of "discrete claims" are taxable to Variety as a part of the litigation as a whole. The matter of Variety's alleged "willful blindness" to its trademark counterfeiting, on the other hand, was the most hotly contested and litigated portion of the lawsuit. As such, the willful blindness matter will not be relegated to the status of a "non discrete claim" so as to preclude any reduction of the fees incurred in unsuccessful pursuit of treble damages for willful blindness.[1]

### (ii) Matters Unrelated to Present Action

Variety also contends that Nike's fee petition inappropriately includes fees incurred in other litigations and settlement negotiations with non-parties to this case. Those other matters are broadly identified as: "fees to cover Factory 2U status"; "pursuit of claims

---

[1] The effect of Nike's unsuccessful effort to prevail in the "willful blindness" is reserved for discussion in part d, below.

10

against suppliers to Variety," "the Jade Apparel v. Variety litigation," "Billy Farmer and connection with Carolina Apparel," and "Hilfiger Licensing v. Wal-Mart." As evidence, Variety submits the affidavit of the senior vice president of Variety's general counsel, who "redlined" those purportedly unrelated matters.

It is not readily apparent to the Court that the redlined matters do not relate to the present action. Neither is it readily apparent to the Court which of the items are redlined because of hours expended on nondeductible issues and motions and which are redlined because they relate to hours expended on matters unrelated to the instant action. The Court therefore accepts Mr. Feinberg's declaration as evidence sufficient to show that the hours shown in the fee petition were expended for purposes of instant action. Accordingly, for purposes of determining the lodestar, hours expended in the redlined matters will not be deducted from the total hours claimed.

b. **Determination of Reasonable Hourly Rate**

Nike filed and litigated the present action in Savannah, Georgia. Variety argues that the non-local hourly rates billed by Gursky are not reasonable by Savannah standards and should be reduced for purposes of determining the lodestar.

"The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" A.C.L.U. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (quoting Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994)). "If a fee applicant desires to recover the

against suppliers to Variety," "the Jade Apparel v. Variety litigation," "Billy Farmer and connection with Carolina Apparel," and "Hilfiger Licensing v. Wal-Mart." As evidence, Variety submits the affidavit of the senior vice president of Variety's general counsel, who "redlined" those purportedly unrelated matters.

It is not readily apparent to the Court that the redlined matters do not relate to the present action. Neither is it readily apparent to the Court which of the items are redlined because of hours expended on nondeductible issues and motions and which are redlined because they relate to hours expended on matters unrelated to the instant action. The Court therefore accepts Mr. Feinberg's declaration as evidence sufficient to show that the hours shown in the fee petition were expended for purposes of instant action. Accordingly, for purposes of determining the lodestar, hours expended in the redlined matters will not be deducted from the total hours claimed.

b. **Determination of Reasonable Hourly Rate**

Nike filed and litigated the present action in Savannah, Georgia. Variety argues that the non-local hourly rates billed by Gursky are not reasonable by Savannah standards and should be reduced for purposes of determining the lodestar.

"The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.' " A.C.L.U. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999) (quoting Cullens v. Georgia Dep't of Transp., 29 F.3d 1489, 1494 (11th Cir. 1994)). "If a fee applicant desires to recover the

non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." Barnes, 168 F.3d at 437. It is even possible that "use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience. . . . especially if it resulted in lower costs than would otherwise be necessary." Id. at 438 (declining to rule out such possibility). Because Nike makes no attempt to show either, the relevant attorney-fee rates to be applied in this case are those of attorneys in Savannah, Georgia.

Variety offers credible affidavit evidence of Savannah relevant attorney-fee rates which is not disputed by Nike.[2] The Court has considered that evidence, which indicates that hourly fees ranging from $225.00 to $240.00 is reasonable in Savannah. The Court also observes, however, that while the legal aspects of this case were not especially complex, the investigatory aspects required particular expertise that may or may not be readily available in Savannah at the rates that Variety urges the Court to apply. In the eyes of this Court, therefore, the reasonable hourly rates for this legal specialty in this geographical area are $250.00 for partners, $160.00 for associates, and $70.00 for paralegals.

---

[2] At a conference in open court held January 5, 2004, the Court offered the parties the opportunity to adduce testimony subject to cross examination regarding any attorney-fee issues. The parties declined to do so, stating that determination of their disputes rested upon this Court's resolution of issues as presented in their written submissions.

In addition to Gursky's attorney fees, Nike incurred (through Gursky) $37,928.74 in attorney services rendered by Oliver, Maner & Gray in Savannah. Having examined the bills for services issued by the Savannah firm to Gursky and having ascertained that the amounts paid for attorney services do not reflect hourly rates greater than the reasonable local hourly rates as determined above, the Court finds that the attorney-fee payments to Gursky's local Savannah counsel should be included in the lodestar.

c. **Calculation of Lodestar**

Work performed by Gursky partners and Of Counsel amounted to 613.28 hours billed. Work performed by Gursky associates amounted to 1,362.85 hours billed. Work performed by Gursky paralegals amounted to 310.30 hours billed.

Applying the reasonable hourly rates determined above to these totals, and adding the amount paid to local Savannah counsel, the lodestar is $ 431,025.74.

d. **Adjustment of Lodestar**

A court "has the opportunity to adjust the lodestar to account for other considerations that have not yet figured in the computation [of the lodestar], the most important being the relation of the results obtained to the work done." Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (citing Hensley, 461 U.S. at 434, 103 S.Ct. at 1940); see also id. at 1357 (noting that such analysis "is simply a way . . . to determine, in a principled manner, how much of the fee is reasonable").

> If the result was partial or limited success, then the lodestar must be reduced to an amount that is

> not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.

Norman, 836 F.2d at 1302 (internal citations omitted) (emphasis added); see also Rose Acre Farms v. United States, 55 Fed. Cl. 643, 669-70 (Fed. Cl. 2003) (reducing total fee award by 10 percent for unsuccessful consequential damages claim).

Here, the Court finds that a percentage adjustment is appropriate in light of Nike's unsuccessful pursuit of treble statutory damages for "willful blindness." Nike's attorneys devoted a great amount of time to the willful blindness matter, and a major portion of the three-day trial concerned willful blindness. The time spent and the ultimate "loss" of treble damages are compelling justifications for significantly reducing the lodestar amount. See Dillard, 213 F.3d at 1356 ("The retrospective futility of work .... cast[s] doubt on the reasonableness of requiring the other side to pay for it."). The Court finds that a reduction of forty (40) percent is necessary and sufficient as an adjustment that reflects Nike's time-intensive and unsuccessful efforts in its pursuit of treble damages. Accordingly, the amount of Nike's recoverable attorney fees will be adjusted to $ 258,615.44 .

3. **Determination of Taxable "Costs"**

Pursuant to the Settlement Agreement and the Trial Order, Nike is entitled to recover its costs associated with the present action. The parties disagree as to the meaning of "costs." Variety contends that Nike is not entitled to recover "expenses" that do not fall

within the definition of "costs" provided in 28 U.S.C. § 1920. Nike contends that the fees-and-costs clause in the Settlement Agreement was intended to make the prevailing party whole by awarding all expenses incurred in connection with an action undertaken for the purpose of enforcing the Settlement Agreement.

One might think that attorneys preparing a provision addressing fees and costs would be more precise in defining its terms or that attorneys construing the meaning of such a provision could stipulate to many of the minor details concerning fees and costs. As the record reveals, however, the parties and attorneys in this case have rarely agreed on anything. Thus, the Court is again called upon to construe the parties' prospective intent from the sparse language of the fees-and-costs clause in the Settlement Agreement.

Because the parties were well aware when they executed the Settlement Agreement that "costs" is a term of art in federal litigation the scope of which is defined in 28 U.S.C. § 1920,[3] and because the Settlement Agreement contains no indication that the parties intended "costs" to include any and all expenses incurred, the Court will limit the award of "costs" to those costs defined in § 1920.

---

[3] Under that section, the following costs may be taxed to the nonprevailing party: fees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees under 28 U.S.C. § 1923; compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. 28 U.S.C. § 1920.

"Expenses" incurred by Gursky or paid by Gursky to local counsel as reimbursement of expenses that are not covered in § 1920 include: online research fees, mailing and courier expenses, phone and fax charges, travel costs, and local counsel fees, and "other" counsel fees. Those expenses are not properly includable as "costs" in this action.

Nike identifies the following expenses as its "1920 costs": court costs, copying costs, deposition transcript costs, witness fee costs, and translator costs in an amount totaling $18,711.36. Of that amount, $981.00 was incurred in a separate lawsuit that has not been shown to be directly related to the present case. That amount will be deducted.

Variety also seeks to exclude the costs incurred for deposition transcripts and for copying. Variety contends that Nike's failure to articulate the uses of the copies and deposition transcripts at trial preclude Nike's recovery of those costs.

The Court disagrees. In this case, the Court is not called upon to apply every restriction normally connected with application of § 1920 to the costs enumerated within the statute. Rather, the Court is to construe the fees-and-costs clause of the Settlement Agreement. In that regard, the Court finds that Nike's copying costs and deposition transcripts are properly taxable to Variety as "costs" under the Settlement Agreement.

Pursuant to the above, the Court finds that costs in the amount of $17,730.36 are taxable to Variety.

4. Denial of Offset

Variety asserts that post-trial stipulations jointly filed by the parties compel the legal conclusion that Nike breached the Settlement Agreement. Variety argues that Nike

represented in the Settlement Agreement that it and its counsel were not aware of any allegedly counterfeit merchandise sold by Variety other than the merchandise identified in the Settlement Agreement. Late in the instant action, however, Nike proposed supplemental stipulations which indicated that it had in its possession three items that were purchased more than a year before the Settlement Agreement was executed. Variety states that at that point it was forced to re-litigate matters that Variety had paid $80,000.00 to resolve in the Settlement Agreement. Accusing Nike of breaching the Settlement Agreement at the very moment of execution, Variety requests the Court to amend its trial Order, if necessary, to reflect Nike's breach, and to offset Variety's $80,000.00 payment against any attorney fees awarded to Nike.

The Court has no authority to amend the Trial Order, in that Variety's filing of an appeal in the Eleventh Circuit divested this Court of jurisdiction over matters not reserved for subsequent determination by this Court. Moreover, in light of the issues on appeal, the Court feels that making findings necessary for granting any offset to Variety would be imprudent in that such findings would effect an improper – albeit indirect – amendment of the Court's trial Order. Accordingly, Variety's request for an offset will be denied.

## CONCLUSION

Pursuant to the above, Nike is entitled to an award of attorney fees incurred in the present action in the amount of $ 258,615.44 and an award of costs incurred in the

present action in the amount of $ 17,730.36, for a total award of $ 276,345.80 which SHALL be taxed against Variety.

Accordingly, Nike's motion for attorney fees and costs (Doc. 152) is GRANTED IN PART and DENIED IN PART. Variety's request that the Court enter an Order amending the Trial Order is DENIED. Variety's request for an offset against the award of attorney fees due Nike is DENIED.

So ORDERED.

_____
JOHN F. NANGLE
UNITED STATES DISTRICT JUDGE

Date: January 30, 2004

UNITED STATES DISTRICT COURT
Southern District of Georgia

Case Number:    4:02-cv-00182
Date Served:    February 2, 2004
Served By:      *[signature]*

Attorneys Served:

Patrick T. O'Connor, Esq.
Paul Hughes Threlkeld, Esq.
Louis S. Ederer, Esq.
Michael D. Pantalony, Esq.
Neil S. Goldstein, Esq.
Ira S. Sacks, Esq.
Glen M. Darbyshire, Esq.
Roy Robinson Kelly IV, Esq.

✓ Copy placed in Minutes
✓ Copy given to Judge
___ Copy given to Magistrate